**SIGNED THIS: March 17, 2011**

```
                              _____
                                    MARY P. GORMAN
                              UNITED STATES BANKRUPTCY JUDGE
```
_____

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| In Re | ) | |
| | ) | In Bankruptcy |
| EL MATADOR, INC., | ) | |
| | ) | Case No. 10-72202 |
| Debtor. | ) | |

## O P I N I O N

Before the Court is the Debtor's Objection to Claim #1-3 of the United States Department of Labor. Debtor's objection is actually a request for subordination of the liquidated damages portion of the claim. Because the Debtor has failed to establish grounds for the equitable subordination of any portion of the claim, the Debtor's Objection will be denied.

**Factual and Procedural Background**

El Matador, Inc. ("Debtor") filed a voluntary petition under Chapter 11 of the Bankruptcy Code on July 13, 2010. The Debtor operates several restaurants in the Decatur, Illinois area.

At the time of filing, the Debtor and its shareholders, Dolores Onate and Ricardo Onate, were defendants in a case pending before the United States District Court for the Central District of Illinois, Urbana Division, entitled *Hilda L. Solis, Secretary of Labor, U.S. Department of Labor  v. El Matador, Inc., et al.*, Case # 2:08-CV-2237. In that District Court case, the United States Department of Labor ("USDOL") accused the Debtor and its shareholders of violating the Fair Labor Standards Act ("FLSA") by failing to pay minimum wages and overtime compensation to employees at the Debtor's restaurants. The USDOL sought injunctive relief to prevent future violations of the FLSA and sought actual and liquidated damages as allowed by the FLSA on behalf of 34 different current and former employees of the Debtor.

On October 19, 2010, the District Court entered an Amended Judgment By Default against Defendant El Matador, Inc. ("Default Judgment").[1] The Default Judgment permanently restrains the Debtor

---

[1]  The Default Judgment was sought by the USDOL after this case was filed and an automatic stay had gone into effect. *See* 11 U.S.C. §362(a). As authority for continuing with the District Court action despite the stay, the USDOL relies on the exception for governmental units to exercise their police and regulatory powers. *See* 11 U.S.C. §362(b)(4). There is ample authority for

-2-

from further violating the provisions of the FLSA, and specifically enjoins the Debtor from conducting any business which fails to pay minimum wages or proper overtime compensation. The Default Judgment also includes a money judgment against the Debtor in the amount of $387,429.87 for the actual amount of unpaid wages and overtime pay due to the present and former employees identified in the Default Judgment and an additional $387,429.87 money judgment against the Debtor for liquidated damages for those same employees as allowed by the FLSA. The Default Judgment requires the total money judgment of $774,859.74 to be paid to the USDOL for ultimate distribution to the individual employees.

On its schedules, Debtor listed all of the individual employees involved in the District Court case and indicated that it disputed their claims. Debtor also listed the USDOL as holding a disputed claim in an unknown amount. A proof of claim bar date for general creditors was set for November 18, 2010. The proof of claim bar date for governmental units was set as 180 days after the entry of the order for relief pursuant to Rule 3002(c)(1). *See* Fed.R.Bankr.P. 3002(c)(1).

On October 5, 2010, the USDOL filed its original claim in the

---

the proposition that a governmental unit may obtain a money judgment along with injunctive or other relief associated with the exercise of its police powers notwithstanding the automatic stay. Collection or enforcement of the money judgment is, however, subject to the stay. See *Chao v. BDK Industries, L.L.C.,* 296 B.R. 165, 169 (C.D. Ill. 2003); *In re Clifton,* 441 B.R. 44, 49 (Bankr. E.D. N.C. 2010).

amount of $774,859.66. An amended claim for the same amount which was designated as Claim #1-2 on the claims register was filed on October 7, 2010. On October 21, 2010, a second amended claim designated as Claim #1-3 on the claims register was filed by the USDOL in the amount of $774,859.74. The original claim had a listing of the amounts due to the individual employees attached to it. Claim #1-2 had a copy of a default order entered October 5, 2010, by the District Court attached to it. Claim #1-3 had the final Default Judgment entered by the District Court on October 19, 2010, attached to it.

Debtor filed its Objection to Claim #1-3 of the USDOL on December 9, 2010. Debtor asserts that the liquidated damages portion of the claim is a penalty and, accordingly, that portion of the claim should be equitably subordinated to other allowed unsecured claims. The USDOL disagrees. The parties have briefed the issues, which are now ready for decision.

## Jurisdiction

This Court has jurisdiction over the issues before it. *See* 28 U.S.C. §1334. Proceedings to resolve the issues raised by the Debtor's Objection to Claim #1-3 of the USDOL are core proceedings. *See* 28 U.S.C. §157(b)(2)(A),(B), & (O).

**Legal Analysis**

A request for any order, including an order subordinating all or part of an allowed claim, must be made by motion. *See* Fed.R.Bankr.P. 9013. Here, the Debtor seeks an order subordinating part of the USDOL's claim but, instead of filing a motion seeking such relief, Debtor has objected to the claim. Nothing in the objection, however, raises any *bona fide* objection to the claim or sets forth a basis for the disallowance of any part of the claim. Thus, the Debtor has raised the issue of equitable subordination in a procedurally confusing and inefficient manner. Because the Debtor's Objection to Claim #1-3 is not an actual objection to the validity of that claim, Claim #1-3 of the USDOL must be and will be allowed as a general unsecured claim. However, because the substance of the objection is a request for equitable subordination, and because the USDOL has not raised any procedural objection to proceeding to resolve the issues based on the documents filed, this Court will treat the Debtor's Objection to Claim #1-3 as a motion for equitable subordination.

The equitable subordination of all or part of an allowed claim is addressed in §510(c)(1), which provides in pertinent part:

> (c) . . . [A]fter notice and a hearing, the court may –
>
> > (1) under principles of equitable subordination, subordinate for purposes of distribution all or part of an allowed claim to all or part of another allowed claim or all or part of an allowed interest to all or part

of another allowed interest[.]

11 U.S.C. §510(c)(1).

Debtor argues that the $387,429.87 liquidated damages portion of the Default Judgment is a penalty and, therefore, must be subordinated as a matter of law.  Although the Debtor says that it is relying on §510(c) as its authority for the relief requested, the Debtor appears to be confusing that section with the provisions of the Code that address the priorities for distribution in asset Chapter 7 cases.  When assets are available for distribution in a Chapter 7 case, claims for fines, penalties, and punitive damages are paid at a lower priority than other general unsecured claims.  *See* 11 U.S.C. §726(a)(2), (4).  The provisions of §726 apply, however, only in Chapter 7 cases, and have no bearing on whether the USDOL's claim should be equitably subordinated in this Chapter 11 case.  See 11 U.S.C. §103(b).  See also *In re Greenig*, 152 F.3d 631, 633 n.3 (7th Cir. 1998) (§726 applies only in Chapter 7 cases and is inapplicable in a Chapter 12 reorganization); *In re Ray Brooks Machinery Co., Inc.*, 113 B.R. 56, 64 (Bankr. M.D. Ala. 1989), aff'd 113 B.R. 66 (M.D. Ala. 1989); aff'd sub nom *Bucyrus Const. v. McGregor*, 898 F.2d. 159 (11th Cir. 1990) (§726 does not apply in Chapter 11 cases.)

The Code does not contain a definition of equitable subordination, nor are precise factors set forth upon which to base a determination of whether a claim should be equitably

-6-

subordinated. The United States Supreme Court has held, however, that, when §510(c) was added to the Code, the intent of Congress was to codify existing case law rather than to change the interpretation of the judicially created concept of equitable subordination. See *U.S. v. Noland,* 517 U.S. 535, 539, 116 S.Ct 1524, 1527, 134 L.Ed.2d 748 (1996). At the time that §510(c) was enacted, the existing case law required that, in order for a claim to be equitably subordinated, the creditor must have engaged in some type of inequitable conduct, and that conduct must have resulted in injury to other creditors or provided an unfair advantage to the claimant. See *In re Mobile Steel Co.*, 563 F.2d 692, 700 (5th Cir. 1977). Further, equitable subordination should only occur when such subordination is not inconsistent with other provisions of the statute. *Id.* More recent case law confirms that the same factors continue to apply. See *In re Kreisler*, 546 F.3d 863, 866 (7th Cir. 2008); *Grede v. Bank of New York Mellon*, 441 B.R. 864, 886 (N.D. Ill. 2010).

Considering the relevant factors here, the Debtor's request for equitable subordination of Claim #1-3 of the USDOL can quickly be resolved in favor of the USDOL. Neither the USDOL nor the individual employees it represents engaged in any inequitable conduct. To the contrary, it was the Debtor and its shareholders who operated businesses in violation of the FLSA and failed to pay minimum wages and overtime compensation to employees. Neither the

USDOL nor the employees received any unfair advantage by obtaining the Default Judgment for the amounts rightfully owed to them, including the liquidated damages allowed by the FLSA. The liquidated damages are not penalties, but are actual compensation for damages incurred by the employees which might be difficult to prove or estimate. See 29 U.S.C. §216(b); *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 707 (1945).

Debtor attempts to avoid this result by asserting that the United States Supreme Court has not specifically required a finding of misconduct in order to allow equitable subordination. However, in *U.S. v. Noland*, the Court did favorably cite the language of *Mobile Steel* reminding bankruptcy courts that they are "not free to adjust the legally valid claim of an innocent party who asserts the claim in good faith merely because the court perceives that the result is inequitable." See *Noland,* 517 U.S. at 539, citing *Mobile Steel,* 563 F.2d at 700.

In this case, the USDOL and the employees it represents are innocent parties who have asserted a claim in good faith. Further, and perhaps most importantly, this Court does not find that permitting the entire USDOL claim to be paid *pro rata* with other unsecured claims is inequitable. The Debtor asserts that there are $156,000 in other unsecured claims and that the holders of those claims will be disadvantaged by having to share *pro rata* with the large USDOL claim. The Debtor's expressed concern for its other

unsecured creditors is, however, disingenuous. The $156,000 of other unsecured claims consists, not of vendors or other third party creditors but, rather, only of the claims of the shareholders, Dolores Onate and Ricardo Onate, and of the law firm of Davis & Campbell LLC.[2] Davis & Campbell represented the Debtor and the Onates in the District Court case prosecuted by the USDOL, and the Onates are jointly liable along with the Debtor for more than $100,000 in fees which remain due to the firm. Inasmuch as the Debtor and the Onates were unsuccessful in that litigation, there are no equitable considerations which would favor subordinating a claim based on the Default Judgment to the claims of the shareholders and their attorneys.

For the reasons set forth above, the Debtor's Objection to Claim #1-3 of the USDOL is found to be without merit and will be denied.

This Opinion is to serve as Findings of Fact and Conclusions of Law pursuant to Rule 7052 of the Rules of Bankruptcy Procedure.

See written Order.

###

---

[2] This Court is aware that, on January 3, 2011, the Debtor filed an amendment to list of creditors and, thereby, added five new parties to the case mailing matrix. At least one of the parties appears to be a previously scheduled secured creditor who was apparently left off the original list filed by the Debtor. The Debtor has not, however, filed any amended schedules and, therefore, it is not clear whether the parties added to the mailing matrix are believed to have claims against the Debtor and, if so, what the nature or amount of those claims might be.